## A97A2160. JOHNSON v. LOY.
(499 SE2d 140)

BEASLEY, Judge.

Between 5:30 and 6:00 p.m. on the evening of August 18, 1994, Suzette Johnson left the retail Color Tile store where she had gone as a customer. She crossed the raised sidewalk and walked onto a short concrete ramp which provided a sloped access to the asphalt parking lot one step below. She stepped on what her attorney described as a "gouge," lost her balance, fell and was injured.

Her expert referred to the condition as a "groove" which constituted "an inordinately severe and hazardous irregular depression on the surface of the ramp." By affidavit he testified that it was caused by "weathering coupled with wear and tear of ramp usage" and that it had existed "for several years prior to my inspection in December 1997," four months after Johnson's fall.

Loy, a resident of a distant state since the 1920s, was the owner of the property on the date of the incident. She and her husband bought the property in 1977. She had no knowledge of the ramp or when it was constructed, and she knew nothing of its condition.

The proprietor of the Color Tile business had secured a 20-year lease with the Loys' predecessor for the whole three-store strip,

which lease was to expire in June 1995. It provided for construction of the building by the then-owner within a given time.

Lessee agreed, at its expense, to maintain and keep the premises in good condition and repair and in clean and wholesome condition, including replacement of the building and all parts thereof. Specific attention was given to "all sidewalks and areas adjacent thereto," as well as all improvements "in the area thereof," which lessee agreed to keep "safe and secure" and in compliance with all local government requirements. Damage to the improvements was to be repaired by the lessee at its expense.

A covenant of "quiet and peaceable enjoyment" passed posses-sion and the right of possession to Color Tile, although the lessor retained the right to enter the premises "at all reasonable times dur-ing business hours for the purpose of inspecting the same." The lessor also retained the right to do any of the things lessee was obligated but failed to do, upon notice, chargeable to lessee, but lessor was not obligated to act.

The lease was subordinate to Loy's mortgage, and in October 1993 the mortgagee initiated an inspection of the property to protect its investment. A copy of the inspection report was sent to the bor-rower, in this case Loy. The inspection report showed the exterior as well as the grounds to be in "good" as opposed to "excellent" or "poor" condition; the interior was classed as "poor." Repairs "needed to pro-tect [the] property" included "repair asphalt where alligatoring has occurred; restripe faded parking stripe." There is only one "general comment": "This property's condition shows signs of neglect and must receive better care."

Suzette Johnson sued Helen Loy for negligence in causing her injuries. After discovery and a hearing on defendant's motion for summary judgment, the trial court granted judgment to Loy, which prompted the appeal.

The trial court ruled as follows:

A. Loy had no duty under the lease to maintain the premises and make repairs because that duty was passed to the tenant along with possession and the right of possession. This included the duty to maintain and repair which the lender required of the borrower in the deed to secure debt.

B. The lease provision reserving to Loy the right to inspect the property was not for the purpose of making repairs, which was the duty of the tenant, but for the purpose of assuring tenant compliance with lease terms. This provision imposed no duty to repair on the landlord.

C. The inspection report did not put Loy on notice that the ramp was defective or needed repair. The ramp is not mentioned in the report, and the reference to alligatoring was to the parking lot

asphalt, not the ramp.

D. If Johnson's fall and injuries were due to someone's negligence other than her own, it was tenant Color Tile's, and *Colquitt v. Rowland*, 265 Ga. 905 (463 SE2d 491) (1995) holds that the lessor-property owner is not liable to a third party for negligent acts of a tenant.

Distilled to their essence, Johnson's contentions on appeal are five-fold:

A. A landlord cannot delegate the statutory duty towards third persons to repair defects in premises, which duty is contained in OCGA § 44-7-14.

B. In addition to the non-delegable statutory duty, the deed to secure debt required the borrower to maintain and repair, and that obligation inured to the benefit of third parties injured on the property which secured the debt.

C. The lease provision giving the landlord the right to inspect was not only for the purpose of assuring compliance but also for the purpose of discovering the need for repairs and making them.

D. The inspection report notified Loy of the alligatoring problem and the general comment that "signs of neglect" indicated the need for "better care," which gave rise to a duty to inspect and so to discover and repair any patent or latent defects such as the depression in the ramp.

E. The duty on Loy created by the deed to secure debt, coupled with the right retained by her under the lease to make repairs if the tenant did not, obligated her after notice given by the inspection report to repair the ramp; consequently, her failure to do so would allow a jury to find her liable to the tenant's invitee for injuries due to the defective ramp.

1. In reviewing a judgment based on the grant of a motion for summary judgment pursuant to OCGA § 9-11-56 (c), the appellate court examines the record anew to ascertain whether first, the trial court accurately ruled that there were no genuine issues as to any material fact and second, the trial court correctly applied the law to the undisputed facts. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

In this process the evidence is construed in the respondent's favor, and the respondent is given the benefit of all doubts and all reasonable inferences, because it is the burden of the one who seeks judgment without trial to establish the basis for the court's ruling on the first question. Id. But "a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991). The moving party may simply show "that there is an absence of evidence to support the nonmoving

party's case." Id. at 491.

Thus, plaintiff Johnson must prove, among other things (proximate cause and damages), that defendant Loy owed a duty to her and that Loy failed to conform to the standard of care required. *Sutter v. Hutchings*, 254 Ga. 194, 196 (327 SE2d 716) (1985).

2. The law provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1.

Nevertheless, as to an owner-landlord, the law further provides: "Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair." OCGA § 44-7-14.[1] The liability of an owner for failure to repair who, like Loy, *has* fully parted with possession and the right of possession, arises only in instances where "there is a duty to repair and notice has been given of the defect ([cit.])" *Maloof v. Blackmon*, 105 Ga. App. 207, 208 (4) (a) (124 SE2d 441) (1962). See *Godwin v. Olshan*, 161 Ga. App. 35, 36 (2) (288 SE2d 850) (1982) (landlord who fully parted with possession of premises had no legal duty to keep leased areas of shopping center safe); *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981); compare *Levy v. Logan*, 99 Ga. App. 253, 255 (1) (108 SE2d 307) (1959) (retaining control or right to inspect, for purposes of repair, retains liability of owner to third persons for injuries from defects).

By the terms of the lease Loy fully relinquished possession and the right of possession and gave an express covenant of quiet enjoyment to Color Tile; in fact, the lease expressly passed to the tenant in control of the premises the duty to maintain it and make necessary repairs. The commercial tenant who has exclusive use is in the best position to preserve the property by safeguarding its use, undertaking preventive measures, detecting disrepair or hazards, and correcting them.

When such a tenant agrees by contract with the landlord to be responsible for maintenance and repair, thereby undertaking the legal duty imposed by OCGA § 44-7-14, public policy does not require

---

[1] Johnson initially complained of negligent construction by Loy but abandoned that theory of recovery after it became clear that the premises had been constructed before Loy became owner and there was no proof that the ramp was constructed during Loy's ownership. An abbreviated history of the landlord's duty under the law is recited in *Thompson v. Crownover*, 259 Ga. 126, 127-128 (1) (381 SE2d 283) (1989).

the landlord to remain liable to third parties for negligence unless there is notice. OCGA § 44-7-2 (b) (2), which prohibits landlords from waiving, assigning, transferring, or otherwise avoiding the rights, duties, and remedies provided by OCGA § 44-7-14, applies only to property to be used "as a dwelling place." Color Tile's store certainly did not fit that limited category, and there is no other comparable statute for commercial premises.

It is true, as Johnson points out, that the lease retained in Loy the right to enter the premises "at all reasonable times during business hours for the purpose of inspecting the same," as well as the right to do at Color Tile's expense anything Color Tile failed to do as was required of it by the terms of the lease. But these provisions, whether taken separately or in tandem, established no correlative duty to repair. As stated in *Godwin*, supra at 36 (2), "retention of . . . the right to enter the leased premises . . . during business hours for landlord-related purposes does not evidence such dominion and control of the premises so as to vitiate [landlord's] limited liability under [OCGA § 44-7-14] and replace it with the liability imposed by [OCGA § 51-3-1]. [Cits.]" *Ladson Investments v. Bagent*, 151 Ga. App. 24, 25 (1) (258 SE2d 718) (1979) ("the duty to inspect arising from such a reservation clause is only commensurate with the scope of the obligation to repair"); *Leonard v. Fulton Nat. Bank of Atlanta*, 86 Ga. App. 635, 638 (72 SE2d 93) (1952) ("[t]he right to inspect is not the equivalent of the right to possess premises, so as to make the landlord liable for the negligence . . . by the tenant").

Loy's limited contractual right to inspect and right to repair at tenant's expense did not carry with them a duty to third parties such as invitee Johnson to safeguard her from harm from a weather-and-use-worn ramp about which Loy did not know. The duty to repair was placed, in no uncertain terms by other provisions of the lease, squarely on the shoulders of the tenant, Color Tile.

3. Johnson contends that a paragraph in Loy's deed to secure debt gave rise to a duty to repair which inured to the benefit of third-party invitees such as herself. Under the provision entitled "Care of Premises," Loy promised the lender as follows:

"The Borrower will keep the improvements now or hereafter erected on the premises in good condition and repair, will not commit or suffer any waste, will perform all such acts with respect to the premises as may be reasonably necessary in the opinion of the Lender under the circumstances of the character and use of the premises, will keep all improvements free of termites, dry rot and all other destructive pests, will keep all plants and lawns in good condition and will not do or suffer to be done anything which will increase the risk of fire or other hazard to the premises or any part thereof."

As shown by its wording, the purpose of imposing on Loy, as the

borrower against this property, the duty created by this portion of the deed was to protect the investment of the lender by preserving the *property* which secured it. It was not, nor did it include, a duty to third *persons* visiting the premises. There is no evidence that the lender objected to the imposition of this duty on the borrower's tenant. The lender would have known there was a tenant in possession, as the record contains evidence of at least one inspection undertaken at its request. Of course, the lease provision did not absolve landlord Loy of her obligation, as borrower, to her lender to keep the property in good repair and so forth.

There is one instance, where the owner who has parted with possession and right of possession and the tenant has undertaken the duty to repair, in which the owner may be liable to third parties for injury. That is where the owner has notice of a dangerous or hazardous condition on the premises. The law holds the owner responsible for defects "of which he knows or in the exercise of reasonable diligence ought to know." (Citations and punctuation omitted.) *Birdsey v. Greene*, 176 Ga. 688, 692 (168 SE 564) (1933); *Flagler Co. v. Savage*, 258 Ga. 335, 337 (2) (368 SE2d 504) (1988) (lease could not relieve landlord of duty to third persons to keep premises in repair; since *Birdsey* is cited for this principle, it includes the condition of notice); *Howell Gas of Athens v. Coile*, 112 Ga. App. 732, 738-739 (1) (a) (146 SE2d 145) (1965) (landlord who has no notice of defect giving rise to need for repair has no duty to third party; landlord has no legal duty to inspect to discover defects); *Groutas v. McCoy*, 219 Ga. App. 252 (1) (464 SE2d 657) (1995) (lease gave tenant exclusive control and obligation to keep premises, except for certain items not including fence, in repair and in compliance with laws; no evidence that owner had notice of noncompliance or defect in fence); *Echols v. Patterson*, 60 Ga. App. 372 (1) (4 SE2d 81) (1939) (no duty to inspect but duty to repair exists where the fact of a defect was known to landlord).

4. Johnson does not contend, nor is there any evidence to show, that Loy knew of the alleged defect in the ramp itself. In fact, the undisputed evidence is that she did not even know of the existence of the ramp. There is no evidence of whether it was built before the Loys purchased the property or whether Color Tile built it.

Thus we address Johnson's challenge to the trial court's conclusion that the inspection report did not put Loy on notice. In *Brandywine Townhouses v. Morrison*, 200 Ga. App. 425, 426 (1) (408 SE2d 422) (1991), a non-precedential case cited by Johnson, the Court depended on earlier cases for the proposition that "[w]hen a landlord is put on notice of a patent defect, he is also charged with knowledge of any latent dangerous condition that a reasonable inspection would have revealed. If he does not make any necessary repairs within a reasonable time, he can be held liable for injuries resulting from the

dangerous condition. [Cits.]" Id. at 427 (1). The court ruled that questions remained concerning whether a reasonable inspection would have revealed a latent dangerous condition (scalding hot water) which was "associated with" water in the globe of the kitchen ceiling light fixture. The tenant, who discovered water in the globe after she had taken a bath in the bathroom directly above the kitchen, reported to the owner on the next morning a leak in the bathroom and water in the globe. The workman did not find the problem, and that evening the tenant and her friend were scalded when they tried to remove the water from the globe.

In the instant case, alligatoring of the parking lot did not relate to the depression in the adjacent ramp. It was not associated with it in any way, and the problem on the ramp was not "alligatoring," nor did the general comment of the inspector, which merely called for better care in the future because of the general condition which the property had acquired through use. In this regard, it was only the interior of the building which rated a "poor" rating by the inspector, whereas the exterior and grounds were rated "good." Although the only specific repairs needed were to the exterior, the ramp was not mentioned.

A jury could not, as a matter of law, find in this report notice to owner Loy of a depression in the ramp. Plaintiff Johnson has presented no other evidence of notice. Thus it is not a case of a landlord who in the exercise of reasonable diligence should have known of the defect.

As in *Stephens v. Ernie's Steakhouse &c.*, 215 Ga. App. 166, 169 (2) (450 SE2d 275) (1994), summary judgment was properly granted to the owner in a suit brought by a customer of the tenant retail establishment for injuries suffered in a fall on an outside access ramp, because the owner had no notice of a defective condition and no duty to inspect or maintain the ramp.

In *Colquitt v. Rowland*, 265 Ga. 905, 906 (463 SE2d 491) (1995), the Supreme Court stated that OCGA § 44-7-14 makes it clear that "a landlord who relinquishes possession of the premises cannot be liable to third parties for damages arising from the negligence of the tenant. [Cits.]" As stated earlier, plaintiff Johnson's expert, an experienced professional architect, inspected the ramp in December 1994 and testified by affidavit that the depression or groove in the ramp was "the result of weathering coupled with wear and tear of ramp usage" and that in his opinion "this dangerous condition existed for several years prior to [his] inspection." Color Tile had been in exclusive control through the contracted-for possession and right of possession since 1975. It is inescapable that if the deteriorated condition of the ramp constituted a hazard, it occurred because of Color Tile's, if anyone's, negligence.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED MARCH 20, 1998.

*Post & Pond, Bruce Berger*, for appellant.
*Michael A. Kessler*, for appellee.